# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WESLEY WILLIAMS, et al. | * | |
| Plaintiffs, | * | |
| v. | * | |
| OFFICER FABIEN LARONDE, et al. | * | CIVIL ACTION NO.: 1:11-CV-524 BEL |
| Defendants | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants Officer Fabien Laronde, Officer Michael Lash, and Officer Carnest McDuffie (collectively, "Defendants" or the "Officers"), by their undersigned attorneys, and pursuant to F.R.C.P. 56 and L.R. 105 hereby file their Opposition to Plaintiffs' Motion for Summary Judgment ("Motion"). This is an action for money damages against three members of the Baltimore City Police Department (the "Department"), which was filed following the arrests of the Plaintiffs, Wesley Williams and Shaney Pendleton on May 13, 2008. Plaintiffs' Motion must be denied because there are genuine disputes of material fact, which preclude the entry of summary judgment in Plaintiffs' favor as a matter of law. In further support of their position, Defendants state:

**I.    INTRODUCTION:**

Plaintiffs Wesley Williams ("Mr. Williams") and Shaney Pendleton ("Ms. Pendleton") were both arrested May 13, 2008; the charges against both plaintiffs were subsequently disposed of by *nolle prosecui*. Ms. Pendleton was arrested for: 1) Second Degree Assault of a Law Enforcement Officer; 2) Obstructing and Hindering; 3) Resisting/Interfering with Arrest; and 4) Possession of a Controlled Dangerous Substance-not marihuana. *See* Circuit Court Docket Sheet

for Ms. Pendleton, attached hereto as **Exhibit ("Ex.") 1**. Mr. Williams was arrested for: 1) Possession of a Controlled Dangerous Substance-not marihuana; and 2) Obstructing and Hindering. *See* Circuit Court Docket Sheet for Mr. Williams, attached hereto as **Ex. 2**. Plaintiffs thereafter filed the above captioned lawsuit seeking money damages and alleging Violations of Section 1983 of Title 42 of the United States Code (Count I); Battery (Count II); False Imprisonment (Count III); False Arrest (Count IV); Malicious Prosecution (Count V); Intentional Infliction of Emotional Distress (Count VI); Invasion of Privacy-False Light (Count VII); Violation of Article 24 of Maryland's Declaration of Rights (Count VIII); and) Violation of Article 26 of Maryland's Declaration of Rights (Count IX). *See* Plaintiffs' Complaint.

Despite the parties' diametrically opposed version of events regarding Plaintiffs' actions before their arrests, the conduct of the Officers during their arrests and the post-arrest events, Plaintiffs filed the Motion seeking judgment as a matter of law as to liability on all counts in their Complaint. Plaintiffs' Motion must be denied as a matter of law because there are genuine disputes of material fact.

## II. FACTUAL BACKGROUND:

Plaintiffs are correct when they state that the location of their arrests is undisputed. *See* Plaintiffs' Motion, p. 2. However, contrary to the assertion in the Motion, the remaining facts in this case are disputed and, therefore, summary judgment is not warranted.

### A. The Arrest of Mr. Williams.

Plaintiffs claim that as Mr. Williams was leaving his home, 2714 Fairmount Avenue in Baltimore City, to meet Ms. Pendleton to pick up their children, he was approached by the Officers, none of whom were immediately identifiable. *See* Plaintiffs' Motion, p. 2. He further claims that while he was seated in a car operated by Ms. Pendleton, the Officers were shouting at

him, telling him to show his hands and pointing guns at him. *Id.* Mr. Williams then claims that the Officers assaulted him by throwing him face first to the ground and punching and kicking him. *Id.* at p. 3. At some point after his arrest, Mr. Williams claimed that he was strip searched on the street in the public's view. *Id.* at p. 14.

Ms. Pendleton claims that she was in the vehicle, and when she observed the Officers' alleged actions towards Mr. Williams, she stepped out of the vehicle, walked towards its rear and attempted to call 911. At that point, she then claims she was struck in the head by Officer Lash, tackled to the ground and subsequently arrested in front of her children and various other onlookers. *See id.* at p. 3. Plaintiffs then claim, without any factual support, that Officer Laronde planted a plastic bag in their vehicle, and falsified a Statement of Probable Cause and a Police Report. *Id.* at pp. 10-11. Defendants dispute all of these claims.

In contrast, each officer testified regarding the events on May 13, 2008 and, the version of events from the Officers differs materially from that offered by Plaintiffs. By way of background, each officer has extensive training/experience in law enforcement. *See* Officer Laronde's Answer to Interrogatory No. 2, attached hereto as **Ex. 3**, Officer Lash's Answer to Interrogatory No. 2, attached hereto as **Ex. 4**, and Officer McDuffie's Answer to Interrogatory No. 2, attached hereto as **Ex. 5**. Additionally, at the time of Plaintiffs' arrests, each Officer had been a member of the Department for at least three years; Officer Laronde joined the Department in 2001, Officer Lash joined in 1999 and Officer McDuffie joined in 2005. *See* Deposition of Officer Laronde, attached as **Ex. 6, p. 6**, Deposition of Officer Lash, attached hereto as **Ex. 7, p. 26**, Deposition of Officer McDuffie, attached hereto as **Ex. 8, p. 16**.

The Officers each testified regarding the events that led to Plaintiffs' detentions. In this regard, Officer Laronde testified, and Officers Lash and McDuffie confirmed, that on May 13,

2008 at approximately 9:00 p.m., he and Officers Lash and McDuffie were patrolling the 2700 block of Fairmount Avenue in an unmarked vehicle. **Ex. 6, p. 8, Ex. 7, pp. 5-8, 54-55, Ex. 8, p. 5**. Officer Laronde was driving the vehicle, Officer Lash was in the passenger's seat and Officer McDuffie was in the back seat. *See* **Ex. 7, pp. 54-55**. This area is known as an open air drug market and was the site of recent violent crime. **Ex. 6, pp. 10, 14**. While patrolling, Officer Laronde observed a male, later identified as Mr. Williams, enter a car parked on the block. **Ex. 6, p. 8**. Officers Laronde and Lash then observed Mr. Williams exit the passenger side of the vehicle and walk toward the rear of the vehicle in the direction of the Officers. **Ex. 6, p. 8, Ex. 7, p. 9**. As he walked toward the rear of the vehicle, Mr. Williams was carrying a small plastic sandwich bag. **Ex. 6, pp. 9, 80, Ex. 7, p. 9**. Officer Laronde testified that Mr. Williams was almost to the vehicle's trunk when he spotted the Officers. **Ex. 6, p. 20**.

Officers Laronde and Lash believed the small plastic bag carried narcotics, and the Officers approached Mr. Williams. **Ex. 6, pp. 8-9, Ex. 7, pp. 9-10**. As the Officers got closer to the vehicle, Mr. Williams noticed them and, with an expression of shock on his face, turned around to get back in the car. **Ex. 6, p. 14, Ex. 7, p. 11**. In this regard, Officer Laronde testified that:

> [a]t that time, believing he was in possession of narcotics, we approached, identified ourselves as police officers. At which time [Mr. Williams] started making movements inside the vehicle and under the seat. The door was open. I could clearly see inside the car. At that time, I asked [Mr. Williams] to step out, show me his hands. At that time [Mr. Williams] exited the vehicle, walked and started making movements with his hands towards his waistband and shielding himself and was turning his back to us. It's not uncommon for someone to do that, based on previous arrests. … I believe he had a weapon or narcotics. At that time, I withdrew my weapon. Advised him several times to show me his hands.

**Ex. 6, pp. 8-9**. Similarly, Officer Lash testified that Mr. Williams:

was exiting out of a vehicle that was parked in the block. As he exited out of the vehicle, he was walking to the rear of the vehicle. While walking, I observed him holding a clear plastic bag in his hand, which was cupped. At which time observing this, I observed Mr. [Williams] observe my presence by looking towards our direction and give a look of astonishment or a look of excitement. At that time, believing that Mr. [Williams] was possibly in possession of street level narcotics, myself, Officer Laronde and Officer McDuffie exited our vehicle and approached to investigate.

**Ex. 7, pp. 9-10.**[1]

Based upon experience and training, the fact that Mr. Williams was in a known drug area, the fact that he had a small plastic bag in his hand, and "the sudden abrupt movements he made to get back in the vehicle as he observed [the Officers]"Officer Laronde believed Mr. Williams possessed narcotics. **Ex. 6, p. 10.** Based upon his experience and training, Officer Lash shared this belief because of these same facts and the fact that Mr. Williams appeared to be fleeing the Officers by returning to the vehicle. *See* **Ex. 7, pp. 10-11**.

As the Officers approached, Officers Laronde and Lash identified themselves as police and Officer Laronde requested that Mr. Williams show his hands. **Ex. 6, p. 8.** In addition to verbally identifying themselves as police, Officers Laronde and Lash also testified that their badges were around their necks and were, therefore, visible. **Ex. 6, p. 28, Ex. 7, p. 53.** Officer McDuffie stood at the rear of the vehicle occupied by Mr. Williams as Officers Lash and Laronde began speaking to Mr. Williams. **Ex. 8, p. 6.** Despite the requests of two of the Officers, Mr. Williams initially failed to comply and, instead, reached under the passenger's side seat. **Ex. 6, p. 8, Ex. 7, pp. 19, 24-25, Ex. 8, p. 7. Only after completing this movement** did he decide to exit the vehicle's passenger seat, and when he exited, his back turned to the Officers

---

[1] Officer McDuffie initially observed Mr. Williams *after* he noticed the Officers, turned his back and returned to the vehicle. Thus, he had no opportunity to observe the bag in Mr. Williams' hand. *See* **Ex. 8, p. 6.**

- 5 -

and he appeared to be reaching into his waistband. **Ex. 6, pp. 8-9.** Fearing for their safety, based upon a belief that Mr. Williams was now in possession of a weapon, Officers Laronde and Lash pulled their weapons and continued to advise Mr. Williams to show his hands. **Ex. 6, pp. 9, 35-36.** Thereafter, Mr. Williams was arrested without further incident, and was with Officer McDuffie. **Ex. 6, pp. 44, 50, Ex. 8, p. 18.** Mr. Williams testified, contrary to Plaintiffs' allegations, that he was never punched or slapped. *See* Deposition of Wesley Williams, attached as **Ex. 9, p. 27.** Subsequent to his arrest, Officer Laronde conducted a search of Mr. Williams. *See* **Ex. 6, pp. 72-74.** As Plaintiffs' Motion concedes, there is an apparent dispute of fact as to the manner in which this search was conducted. *See* Plaintiffs' Motion, pp. 14, 24. However, contrary to Plaintiffs' claims, Officer Laronde testified that he did not disrobe Mr. Williams in conducting this search and, similarly did not search beneath his genitals. **Ex. 6, pp. 74-76.**

Officer Laronde later searched Mr. Williams' vehicle and recovered a plastic bag from under the passenger seat of the vehicle, which bag had a white residue all over its inside. **Ex. 6, pp. 80-81.** Plaintiffs' allegation that Officer Laronde "planted" the plastic bag is factually unsupported and obviously disputed. Plaintiffs' claim that Officer Laronde falsified the police report and probable cause statements in the action are equally unsupported and disputed. In this regard, Officer Laronde testified clearly that he recovered the plastic bag under the passenger's seat during the search of the vehicle, *id.,* and that it was submitted to ECU, **Ex. 6, p. 89.** He also testified that he felt that Mr. Williams had *another* bag, which Plaintiffs discarded. **Ex. 6, p. 144.**

### B. The Arrest of Ms. Pendleton.

Ms. Pendleton claims that as she saw Mr. Williams being assaulted, she exited the vehicle, walked towards its rear and, while calling 911, was struck by Officer Lash and

subsequently arrested. *See* Plaintiffs' Motion, p. 3. All of these facts are disputed by the Officers. In this regard, the Officers contend that *after* Mr. Williams was arrested, Ms. Pendleton was asked by Officer Lash to step out of the vehicle so that he could conduct a search incident to Mr. Williams' arrest. **Ex. 7, p. 65-66.** In response to Officer Lash's command, according to Officer Laronde, Ms. Pendleton locked the vehicle's doors, began pressing the horn and began shouting. **Ex. 6, p. 53-54.** Officer Lash testified that he told her:

> I'm a police officer. You have to step out of your vehicle. And she began to yell and ... And I said, you have to step out of the vehicle. I'm ordering you, giving you a lawful order to step out of the vehicle. And she continued to argue and complain. I stated to her again that if you do not get out of the vehicle, you're going to be placed under arrest. I gave her a warning and I continued to give her warnings.

**Ex. 7, p. 73.** When Ms. Pendleton eventually exited the vehicle, she began running down the street.[2] *See* **Ex. 6, p. 57, Ex. 8, p. 12 and Ex. 7, pp. 77-78.** Officer Lash observed this and "said, police, stop. You're under arrest." **Ex. 7, p. 77.** He then followed Ms. Pendleton. When Officer Lash caught up to her, Ms. Pendleton assaulted him. *Id.* In this regard, in order to detain Ms. Pendleton, Officer Lash testified that he "[w]ent to grab her elbow while she was running, she turned and she took her elbow and elbowed me in the chest. ... And then when she elbowed me in the chest, she continued that motion in taking her right hand and hit me in the face with a closed fist." **Ex. 7, p. 77.** In response, Officer Lash grabbed her right hand using a technique taught by the Department, took Ms. Pendleton to the ground and arrested her with Officer Laronde's assistance. **Ex. 7, pp. 77-79.** In taking Ms. Pendleton to the ground, she may have had a contusion on her knee and a cut on her elbow and fingernail. *Id.*, p. 89-90. Ms. Pendleton

---

[2] Officer Laronde testified that she ran away when "another Mr. Williams came to the scene and distracted Officer Lash." **Ex. 6, p. 57.** This "Mr. Williams" was later identified as Brian Williams and was arrested. *Id.* at pp. 58-60. However, Brian Williams is not a plaintiff in the above-captioned lawsuit.

>[OFFICER LARONDE]: I'm referring, yes.
>
>[COUNSEL FOR PLAINTIFFS]: What did you find on the ground?
>
>[OFFICER LARONDE]: Eventually, we recovered a -- just a plastic bag with white residue was recovered from the ground, which may or may not have been what the defendant had.

**Ex. 6, p. 19.** (Emphasis added). When Officer Laronde refers to "the ground," it is apparent that he's discussing Mr. Williams' actions once he returned to the inside of the vehicle. There is no indication that Officer Laronde found the plastic bag outside of the vehicle. Further, it is clear when Officer Laronde discussed the location of the bag that he was referring to his Statement of Probable Cause which indicated that the bag was found in the vehicle. This is a clear dispute of material fact between the Plaintiffs and Defendants.

Plaintiffs then go so far as to accuse Officer Laronde of producing the bag from his own clothing and planting it on the scene to support his allegedly improper search and arrest. *See* Plaintiffs' Motion, p. 12. Defendants' testimony as to the circumstances surrounding the search of the vehicle is in direct opposition to Plaintiffs' version of the facts. Moreover, Plaintiffs' citation of Defendants' testimony in support of their bald allegations of impropriety by Officer Laronde is disingenuous and an inappropriate attempt to mislead the Court. The dispute of material facts in relation to the allegations of impropriety on Officer Laronde's part are material to the determination of the legal justification for Mr. Williams's arrest.

### 4. Numerous Material Facts Surrounding the Arrest of Ms. Pendleton Are In Dispute.

Plaintiffs allege that Ms. Pendleton, shocked and frightened at viewing Mr. Williams being beaten and kicked by men she supposed were armed robbers, immediately exited the vehicle and stood by the driver's side door to call 911. *See* Plaintiff's Motion, p. 3. Plaintiffs